UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBIN ROY,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | NO:  CV-12-3078-FVS<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

Before the Court are cross-motions for summary judgment, ECF Nos. 16, 17.  The Court has reviewed the motions, the memoranda in support, the Plaintiff's reply memorandum, and the administrative record.

## JURISDICTION

Plaintiff Robin Roy filed an application for Supplemental Security Income ("SSI") on June 16, 2008.  (Tr. 112-14.)  Plaintiff alleged an onset date of August 28, 2007.  (Tr. 112.)  Benefits were denied initially and on reconsideration.  On May 22, 2009, Plaintiff timely requested a hearing before an administrative law

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

judge ("ALJ").  (Tr. 84-86.)  A hearing was held before ALJ Moira Ausems on June 18, 2010.  (Tr. 37-63.)    At that hearing, testimony was taken from vocational expert Sharon Welter; and the claimant, Ms. Roy.  (Tr. 37.)  Ms. Roy was represented by Attorney James D. Tree at the hearing.  On October 1, 2010, ALJ Ausems issued a decision finding Plaintiff not disabled.  (Tr. 18-27.)  The Appeals Council denied review.  (Tr. 1-3.)  This matter is properly before this Court under 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of this case are set forth in the administrative hearing transcripts and record and will only be summarized here.  The Plaintiff was twenty-four years old when she applied for benefits and was twenty-six years old when ALJ Ausems issued her decision.  The Plaintiff currently is unemployed and lives in a house with her partner and her partner's father.  The Plaintiff has not worked since working at a restaurant in 2007.  The Plaintiff describes mental health conditions that keep her from finding employment, specifically depression and anxiety.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

*Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989) (citing *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

(9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If the plaintiff is able to perform his or her previous work, the claimant is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the

claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the

process determines whether the claimant is able to perform other work in the

national economy in view of his or her residual functional capacity and age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921

(9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial

burden is met once the claimant establishes that a physical or mental impairment

prevents him from engaging in his or her previous occupation.  The burden then

shifts, at step five, to the Commissioner to show that (1) the claimant can perform

other substantial gainful activity, and (2) a "significant number of jobs exist in the

national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d

1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found that

Plaintiff has not engaged in substantial gainful activity since June 16, 2008, the

application date.  (Tr. 20.)  At step two, the ALJ found that Plaintiff had the severe

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

impairments of: (1) an adjustment disorder with depressed mood versus a major depressive disorder, (2) posttraumatic stress disorder ("PTSD"), (3) a personality disorder with antisocial and dependant features, and (4) methamphetamine and marijuana dependence.  (Tr. 20.)  The ALJ found that none of the Plaintiff's impairments, taken alone or in combination, met or medically equaled any of the impairments listed in Part 404, Subpart P, Appendix 1 of 20 C.F.R.  (Tr. 20.)  The ALJ determined that the Plaintiff had the RFC to perform work at all exertion levels but that her mental impairments resulted in nonerxitional deficits that restricted her to semi-skilled tasks and limited her to work involving only superficial and infrequent public contact.  (Tr. 21-22.)  At step four, the ALJ determined that the Plaintiff had not engaged in any prior relevant work.  (Tr. 25.)  At step five, the ALJ, relying on the testimony of a vocational expert, found that the Plaintiff could perform jobs that exist in significant numbers in the national economy.  (Tr. 25.)  Accordingly, the ALJ found that the Plaintiff was not under a disability for purposes of the Act.  (Tr. 26.)

## ISSUES

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence or free of legal error because (1) the ALJ failed adequately address the opinions of Ms. Roy's treating and examining medical providers, which affected the ALJ's findings at steps three and four, and (2) the Defendant failed to meet its

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

burden of proving that jobs existing in significant numbers could be performed by

Ms. Roy because the hypothetical proposed to the vocational expert failed to

include all of Ms. Roy's limitations.

## DISCUSSION

**Medical Evidence**

In evaluating a disability claim, the adjudicator must consider all medical

evidence provided.  A treating or examining physician's opinion is given more

weight than that of a non-examining physician.  *Benecke v. Barnhart,* 379 F.3d

587, 592  (9th Cir. 2004).  If the treating physician's opinions are not contradicted,

they can be rejected by the decision-maker only with clear and convincing reasons.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may

reject the opinion with specific, legitimate reasons that are supported by substantial

evidence. *See Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463

(9th Cir. 1995).  In addition to medical reports in the record, the testimony of a

non-examining medical expert selected by the ALJ may be helpful in her

adjudication.  *Andrews,* 53 F.3d at 1041 *(citing Magallanes v. Bowen,* 881 F.2d

747, 753 (9th Cir. 1989).  Testimony of a medical expert may serve as substantial

evidence when supported by other evidence in the record. *Id.*

Historically, the courts have recognized conflicting medical evidence, the

absence of regular medical treatment during the alleged period of disability, and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir 1989). The ALJ need not accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical finding." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (*citing Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Where an ALJ determines a treating or examining physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for considering the purpose for which the doctor's report was obtained and for rejecting the inconsistent, unsupported opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996.) Rejection of an examining medical source opinion is specific and legitimate where the medical source's opinion is not supported by his or her own medical records and/or objective data. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Ms. Roy argues that ALJ Ausems failed to appropriately address the opinion of non-examining psychological expert, R. Renee Eisenhauer, Ph.D. Dr. Eisenhauer reviewed a February 27, 2008, evaluation produced by Christopher Clark, LMHC, for the Washington State Department of Social and Health Services ("DSHS"). (Tr. 190-95, 212-17.) Dr. Eisenhauer also reviewed a June 4, 2008, evaluation produced by Lindsey Vaagan, MSW, on behalf of DSHS. (Tr. 196-201,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

205-10.)  Based upon those two reports, Dr. Eisenhauer granted approval for expedited Medicaid benefits "on the basis of 12.04."  (Tr. 186.)

Ms. Roy argues that ALJ Ausems failed to address Dr. Eisenhauer's opinion and that Dr. Eisenhauer's opinion should be interpreted as meaning that Ms. Roy equals the listing for an affective discover under § 12.04 of Part 404, Subpart P, Appendix 1 of 20 C.F.R.  Ms. Roy argues that, as a result of this omission, the ALJ failed at step three by not finding Ms. Roy disabled.

A state agency medical professional's determination that a claimant meets or equals a medical listing is not binding on an ALJ.  Social Security Ruling ("SSR") 96-6p.  However, such a conclusion must be treated as expert opinion by the ALJ and addressed accordingly.  SSR 96-6p.  The opinion of a non-examining physician may be rejected "by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

The ALJ provided two bases for rejecting Dr. Eisenhauer's opinion.  First, ALJ Ausems stated that Dr. Eisenhauer's opinion lacked proper evidentiary foundation because it appeared to be in reference to another individual with the same name as Ms. Roy.  (Tr. 24.)  At the June 18, 2010, hearing, counsel for Ms. Roy mentioned that certain medical records appeared to refer to a similarly named person who was not Ms. Roy.  (Tr. 40.)  Throughout her opinion, Dr. Eisenhauer

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

refers to Ms. Roy as "[t]his man" and "[h]e." (Tr. 186.) Accordingly, the ALJ was not without basis to question the applicability of Dr. Eisenhauer's opinion.

That said, the Court concludes that the gender confusion was not sufficient to support rejection of Dr. Eisenhauer's opinion. The social security number referenced in Dr. Eisenhauer's opinion matches Ms. Roy's number. Additionally, the February and June 2008 evaluations, which Dr. Eisenhauer relied upon, were accurately described in Dr. Eisenhauer's opinion. (Tr. 186.) Those evaluations refer to Ms. Roy as a female and reference Ms. Roy's birthdate and contain a consistent case number. (Tr. 190, 196, 205, 212). Given that every other identifying factor and the substance of the report support a finding that the opinion refers to Ms. Roy, the Court finds that the ALJ's conclusion that Dr. Eisenhauer's opinion referred to a different person is not supported by substantial evidence.

The second reason ALJ Ausems gave for rejecting Dr. Eisenhauer's opinion was that the opinion was not consistent with the other medical evidence. (Tr. 25.) Specifically, ALJ Ausems noted that treatment notes for Ms. Roy showed improvement in symptoms during those times that Ms. Roy complied with her prescribed treatment but noted that such periods of improvement were marred by drug relapses and repeated failures to follow treatment. (Tr. 22-23.)

Treatment notes support the fact that starting in late 2007, Ms. Roy sought mental health treatment at Central Washington Comprehensive Mental Health

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

("CWCMH").  (Tr. 277-78.)  Very quickly, Ms. Roy found improvement through a combination of medication and abstaining from methamphetamine use.  (Tr. 275-77.)  After a six-month gap in treatment, Ms. Roy returned and noted that her medication was stopped because she had been jailed.  (Tr. 274.)  Again, abstention from drug use and medication improved her mood.  (Tr. 270-72.)  During this time period, Ms. Roy was reported to have been well groomed, motivated, cooperative, responsive, and displayed intact cognition and memory. (Tr. 229-36.)

Ms. Roy maintained a positive response to her medication and regularly attended group therapy sessions with apparent positive response.  (Tr. 356-58, 360-61, 363.)  At a group session on September 16, 2008, Ms. Roy was asked to provide a urine specimen for a drug test but stated that she "did not have to go." (Tr. 355.)  Ms. Roy left the meeting space, ostensibly to get drinking water, and did not return.  (Tr. 355.)  After missing the next group session, Ms. Roy appeared for a mental status exam and appeared distressed.  (Tr. 353-54.)   Over the next few group sessions, Ms. Roy exhibited more up and down behavior but most meetings were positive.  (Tr. 338-351.)  While a mental status exam performed on November 10, 2008, noted a dysphoric mood, Ms. Roy's treatment providers set out to try a new medication and follow up in a month.  (Tr. 333-34.)  Ms. Roy's mood seemed to deteriorate during December 2008.  (Tr. 326-27.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

On January 8, 2009, Ms. Roy had a meeting to address her medication management. (Tr. 323-25.) Ms. Roy was severely depressed at this meeting. (Tr. 323-25.) However, while Ms. Roy's symptoms had returned, Ms. Roy admitted that she had stopped taking her medication and had relapsed back into taking methamphetamine. (Tr. 323.) Ms. Roy stated that she believed her medication was helpful when she was taking it. (Tr. 323.)

After the January 2009 meeting, the administrative record shows no evidence of visits to CWCMH until May 2009. (Tr. 479.) After May, Ms. Roy made visits on an approximately monthly or semimonthly basis. (Tr. 479-521.) However, toward the end of 2009 and beginning of 2010, Ms. Roy became more erratic in her attendance. (Tr. 522-535.) During this time, Ms. Roy was prescribed multiple combinations of medicine, (Tr. 515, 527, 535), and even reported success with one particular medication that had also worked in the past, (Tr. 520.) However, Ms. Roy again failed to continue taking her medications. (Tr. 525-26, 535.) In April 2010, Ms. Roy appeared at Yakima Regional Medical Center complaining of vomiting and throat pain. (Tr. 543.) At that time, Ms. Roy admitted to using methamphetamine four days prior to her hospitalization. (Tr. 543.)

In light of the foregoing, the overwhelming evidence from Ms. Roy's treatment records supports the conclusion of the ALJ that Ms. Roy saw improved

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

functioning when she adhered to her treatment but did not consistently maintain

taking her medications and abstaining from drugs.  When a person suffers a

disabling impairment and treatment could be expected to restore his or her ability

to work, the person must follow the prescribed treatment to be found under a

disability.  SSR 82-59.  Ms. Roy's improvement while abstaining from

methamphetamine and while taking her medication was not reflected in the mental

evaluations performed by DSHS in February and June of 2008.  For example, the

February 2008 evaluation occurred during Ms. Roy's six-month gap in treatment.

(Tr. 190, 212, 274-75.)  The evaluator, Christopher Clark, LHMC, noted that

medication had been helpful to Ms. Roy and that consistent treatment could

ameliorate her depression and anxiety.  (Tr. 192-93, 214-15.)  The June evaluator,

Lindsey Vagaan, MSW, noted that Ms. Roy had only been on antidepressant

medication for two days at the time of the evaluation, was in need of mental health

treatment, and that her depression could be addressed through treatment.  (Tr. 198-

99, 207-08.)  Given that the extreme limitations identified by Mr. Clark and Ms.

Vagaan were observed while Ms. Roy was not regularly taking her medication and

during varying stages of Ms. Roy's substance abuse recovery, the ALJ had

substantial evidence to support her decision to discount those opinions.  Because

Dr. Eisenhauer's decision is based solely on those two evaluations, the ALJ's

decision to discount Dr. Eisenhauer's opinion is similarly supported in the record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

Accordingly, the ALJ did not fail at step three of the five-step sequential process when the ALJ did not credit Dr. Eisenhauer's opinion that Ms. Roy met the listing under 12.04.  Additionally, the ALJ did not err in her RFC when she failed to incorporate any limitations identified by Dr. Eisenhauer, Mr. Clark, or Ms. Vagaan.

Apart from the ALJ's handling of the opinion of Dr. Eisenhauer, and the opinions of the sources relied upon by Dr. Eisenhauer, the Plaintiff also challenged the weight the ALJ gave to treating physician Wilson Chan, M.D.  Dr. Chan opined in a short form that, due to her mental health limitations, Ms. Roy would miss two days of work per month and would suffer a deterioration of her mental condition if she were to work.  (Tr. 390.)  ALJ Ausems accorded Dr. Chan's opinion little weight.  (Tr. 25.)

As noted above, a treating physician's opinion is entitled to great weight; however, if a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).  Here, Dr. Chan's opinion was contradicted by the opinion of examining psychologist Jay M. Toews who concluded that Ms. Roy was "capable of functioning in a wide range of routine and repetitive work environments."  (Tr. 290.)  Dr. Toews noted "no indication of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

anxiety or anxiety related symptoms.  Inquiry failed to elicit symptoms referable to

PTSD."  (Tr. 289.)  As is consistent with the overall tenor of the ALJ's decision,

Dr. Toews' examination occurred on September 24, 2008, (Tr. 286), when

contemporaneous medical status reports show that Ms. Roy was attending group

therapy sessions and had reported as sober for over two months.  (Tr. 348-53.)

Although, it should be noted that she had failed to provide a urine sample and

missed a meeting shortly before the examination by Dr. Toews.  (Tr.  354-55.)

Additionally, Ms. Roy's anxiety medication was changed two days prior to the

meeting with Dr. Toews.  (Tr. 352-53.)

        Given the contradictions between the opinions of Dr. Toews and Dr. Chan,

the ALJ could reject the opinion of Dr. Chan by providing specific, legitimate

reasons that are supported by substantial evidence.  *See Flaten*, 44 F.3d at 1463.

The ALJ provided numerous reasons in support of her decision to grant Dr. Chan's

opinion little weight.  First, ALJ Ausems noted that Dr. Chan's conclusions were

contradicted by Dr. Chan's treatment records.  (Tr. 25.)  Dr. Chan saw Ms. Roy

twice in 2008.  (Tr. 270-71, 272-73.)  Both times he observed Ms. Roy, Dr. Chan

noted that her mood and affect were normal and that she was alert and oriented.

(Tr. 270, 272.)  Dr. Chan also noted that Plaintiff's "mood swing and racing

thoughts have been controlled with medication."  (Tr. 271.)


ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16

Dr. Chan examined Ms. Roy twice in 2009.  (Tr. 606, 612-13.)  The first examination was in response to patient complaints of neck and back pain and did not address mental health issues.  (Tr. 606.)  The second examination occurred as the result of Ms. Roy's need for paperwork for the present social security disability claim.  (Tr. 612.)  Again, Dr. Chan noted a normal mood and affect and noted that Ms. Roy was alert and oriented.  (Tr. 612.)  In short, none of the treatment notes memorializing Dr. Chan's examinations of Ms. Roy establish any direct observations of Ms. Roy's anxiety, and even if such observations had been made, the treatment notes support the ALJ's conclusion that Ms. Roy's mental health issues are amenable to medication.  As a result, the Court finds that this basis for rejecting Dr. Chan's opinion is specific and legitimate and supported by substantial evidence in the record.  Accordingly, ALJ Ausems did not err in rejecting Dr. Chan's opinion.

**Step Five Burden**

Ms. Roy argues that the Commissioner failed to meet her burden at step five. At step five, the burden of proof shifts to the Commissioner to show there are a significant number of jobs in the national economy that Plaintiff can still perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  The ALJ may rely on vocational expert testimony if the hypothetical presented to the expert includes all

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

functional limitations supported by the record and found credible by the ALJ.
*Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

 The bulk of Ms. Roy's challenge is based on the ALJ's failure to include in her hypothetical those limitations offered by Dr. Chan, Dr. Eisenhauer, and the DSHS evaluations.  As the Court has already determined that ALJ Ausems did not err in rejecting those limitations, there is no failure on the ALJ's part in not including those limitations in the hypothetical given to the vocational expert.  The only other basis for Ms. Roy's step-five argument is an assertion that ALJ Ausems gave an incomplete hypothetical by failing to include moderate limitations identified by Eugene Kester, M.D., a state-agency consultant.  ALJ Ausems gave Dr. Kester's opinion significant weight.  (Tr. 24.)  Dr. Kester filled out an SSA-4734-F4-SUP form.  (Tr. 313-16.)  In section I of that form, Dr. Kester checked a box noting that Ms. Roy suffered a moderate limitation in "[t]he ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 314.)  Dr. Kester also checked a box noting that Ms. Roy suffered a moderate limitation in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."  (Tr. 313.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

The Program Operations Manual System ("POMS") published by the Social Security Administration, while not binding precedent, makes clear that section I of the SSA-4734-F4-SUP is not offering an opinion.  The POMS explains that:

> The purpose of section I ("Summary Conclusion") on the SSA-4734-F-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-Sup **that adjudicators are to use as the assessment of RFC.** Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.

POMS DI 25020.010(B)(1) (emphasis in original).  In light of the fact that the worksheet portion is not intended to be taken as opinion evidence, the ALJ did not err in failing to individually address each checked box.  Instead, ALJ Ausems appropriately addressed the narrative portion contained in section III of the form, in which Dr. Kester explained his opinion.  (Tr. 24.)  Additionally, the hypothetical given to the vocational expert incorporated the limitations identified in Dr. Kester's narrative.  (Tr. 58-59.)  Accordingly, the ALJ's decision at step five was supported by substantial evidence and free of legal error.

Accordingly, **IT IS HEREBY ORDERED:**

1.  The Plaintiff's motion for summary judgment, ECF No. 16, is DENIED.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

2.  The Defendant's motion for summary judgment, ECF No. 17, is

    GRANTED.

3.  JUDGMENT shall be entered for the Defendant.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order, to

provide copies to counsel, and to close this file.

**DATED** this 4th of November 2013.


                            _____*s/Fred Van Sickle*_____
                                  Fred Van Sickle
                            Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20